McAdam, C. J
—The defendant concedes that he received pay twice for the bill owing to him by the plaintiffs. They evidently intended to pay but once, and, on discovering their mistake, they demanded the return of the over-payment, and the defendant has failed to discharge the moral and legal duty of returning it. The second payment was made by check, and, if the defendant was conscious, at the time of receiving the check, that the bill had already been paid, it was his duty to have returned the check immediately to the plaintiffs. If he accepted the second payment unconscious of the fact of the prior payment, he ought to have returned the amount of the check upon notice of the mistake, and his refusal to do so is evidence of the fact that he wrongfully converted the proceeds to his. own use. In either event the debt was fraudulently contracted. No debt existed until the defendant converted the check into cash and in that way got into his possession so much money that did not belong to him. He cannot expect us to assume or find that the plaintiffs intended to pay the bill twice—he knew better. In Wolfstein v. The People (6 Hun, 121), the prisoner presented a draft for $74 dollars in gold. The paying teller of the German-American Bank read the figures as $742. The prisoner accepted the larger sum and he was convicted of larceny and the conviction was affirmed. The court in that case said: “If the overpayment was observed in the bank, when the money was delivered, and the prisoner took it with the intent "to cheat and defraud the owner, the crime was then complete.
If, however, the error was not then detected, but was afterward, and the intent of felonious appropriation was then formed and executed, the legal guilt of the prisoner was at that time incurred.”
A. having four bank notes folded together in his pocketbook, consisting of two $100 notes, a $50 note and a $10 note, went to the store of B. to pay him two dollars, which he owed him, and told him he had come to pay it] and by mistake took from it one of the $100 notes instead of the $10 note, and handing it to B., apologized to him for handing him a $10 note in paying so small a bill. B. took the $100 note, looked at it, and then went with it to his money drawer, opened it and looked in it and then told him he could not make the change, but he would step out and get the change in the store next to his, which he did, and soon returned and handed him eight dollars as his *646 change for it. This occurred on Thursday evening, after the lamps had been lighted in the store, but A. did not discover his mistake until the following Saturday, when B. alleged that he had committed a mistake, that he had given him a $10 note and not a $100 note, and that he returned him eight dollars, the right change for it. It was held that if B. knew it was a $100 note, and not a $10 note, when he took it from A. and looked at it, and went to his money drawer with it, and procured and returned to him the eight dollars as the right change for it, and designedly and fraudulently concealed it and appropriated the $100 note to his own use without the consent of A., it was a felonious taking and carrying away of the note by him with that intent, and constituted the crime of larceny. State v. Williamson, 1 Houst. Del. Crim. R., 155.
Where A. owed B. two dollars, and in paying him made a mistake and gave him a $1 bill and a $10 bill, thinking the latter was a $1 bill, and B. appropriated the money so overpaid, after discovering the mistake made by A.; held to constitute larceny in B. He must have known at the very time he received the money that he was receiving more than was intended for him, and must then have intended to convert the same to his own use. This would be a fraud amounting to a larceny. Bailey v. State, 58 Ala., 414.
In the case last cited, the court also held, that if the prisoner was not guilty of a felonious intent at the time he received the money, he committed no crime, but was guilty of a civil tort, known as trover and conversion, and such is the character of the present action.
In Reg v. Ashwell (37 Eng. R., Cook’s notes, 767), defendant asked K. to lend him a shilling, and gave him what both supposed to be a shilling, but which was in fact a sovereign. Defendant sometime afterward discovered the mistake and fraudulently appropriated the sovereign to his own use. Held, that the defendant had not been guilty of larceny as bailee; but the court being equally divided as to whether he had not been guilty of larceny at common law, the conviction stood.
Opinions were written in the case last cited by eight of the judges, and illustrations of different kinds were given, but with the above result. Reference was made to the adjudicated cases, and among others to Merry v. Green (7 M. & W., 623), which was the case of a purse in a secret drawer of a bureau which had been purchased at a sale.
The court, per Parke, B., said: “It seems to us, though there was a delivery of the secretary and a lawful property in it thereby vested in the plaintiff, there was no delivery so as to give a lawful possession of the purse and money. *647 The vendor had no intention to deliver it, nor the vendee to receive it. Both were ignorant of its existence, and when the plaintiff discovered that there was a secret drawer con-' taining the purse and money, it was a case of simple finding, and the law applicable to all cases of finding applies.” The law is, that if a person finds property that has been lost, and appropriates it with intent to take the entire dominion over it, he at the same time knowing the owner thereof, is guilty of larceny. See the cases collated in 2 Arch. Pl. and Practice, 1235, et seq. From the principles laid down in the various authorities, applying them as far as applicable to this case, and substituting the word “fraudulent” for “felonious” intent, we hold that, if the defendant knew when he received the check that the bill had already been paid, It was a fraudulent act on his part to collect the money on the check. If he did not know of the double payment until informed of the fact by the plaintiffs, the retention by him of their money after knowledge, was a fraudulent misappropriation on his part. People v. Civille, 9 N. Y. State Rep., 104. The defendant cannot convert the transaction into a mere ordinary contract debt without the plaintiff’s consent. He cannot become their debtor against their will. Merchants who pay debts once perform their full duty, and it is a fraud to exact double payment, no matter what may have worked the result. In Hildebrand v. The People (56 N. Y., 394), the prosecutor took a drink at a bar, and handed a fifty dollar bill to the bartender, who took it, and when asked for change, ejected the prosecutor from the premises. Held, that the prosecutor had not parted either with the possession of or property in the bill; its delivery and the giving of change were to be simultaneous, and until the latter, the former was incomplete, and the act of the bartender larceny. There was no trick or fraud in inducing the prosecutor to deliver the fifty dollar bill. It was delivered voluntarily, and the case turned upon the point that no trust or confidence was reposed in the prisoner, and none intended to be. In the present controversy no trust was reposed in or credit given to the defendant. Hone was intended to be. He became possessed of so much of the plaintiff’s property by their mistake, and acquired no right of control over or title to it against their will.
They never consented to. the use or retention of their money by the defendant, and as he must have known that the plaintiff’s never intended to part with the property, or their dominion over it, his use and subsequent retention of it after demand made therefor, seem to us conclusive evidence of fraudulent intent on his part to misappropriate the money to his own use. In the Justice, etc., v. The *648 People (90 N. Y., 12), it appeared that the prisoner, a saloon keeper, received from R. a twenty dollar gold piece out of which to take pay for twenty-five cents worth of liquor; not being able to make change, he was requested by R. to go out and get the change; he went out and lost the money by gambling. Held, that the prisoner was properly convicted of larceny. In the case cited, the failure of the prisoner to return, not the identical money of the prosecutor—but that received in exchange for it completed the crime charged. The return of a small portion of the money by the prisoner would not have altered the result in the case cited, and this may be likened to the effect of the small return (816.50), made by the defendant and credited by the plaintiffs in their papers, a circumstance which does not, of itself, affect their cause of action and does not transform it from one in tort to one founded on contract. In the present case, the defendant wrongfully retained and converted the proceeds to his own use after demand on him therefor. The authorities cited are criminal cases, and if they serve no other purpose, they at least, demonstrate that retaining possession of property acquired (under circumstances similar to those disclosed in this case), after knowledge of the fact is an act which has been treated more severely than any civil tribunal has power to impose. They effectually repudiate the idea that such transactions create the ordinary relation of debtor and creditor, or that the remedy of the injured party is confined to that which prevails in civil actions to recover “money had and received, to and for the-plaintiff’s use.” The offense is treated as a tortious act, not partaking the element of contract obligation, which implies the mutual assent of parties to some definite conclusion. No one claims that the minds of the parties ever-met as to the subject-matter of this litigation. The very nature of the transaction negatives the existence of any such idea. The action proceeds on the theory of the defendant’s wrong. The act of the defendant, under -the circumstances of the case, may perhaps, be one of which the criminal courts have no cognizance, but it is certainly the duty of civil courts to right the. wrong, if they have the power to do it. Propositions were made and entertained looking forward to the righting of the wrong by delivering goods, but these were not forthcoming, and the plaintiffs as they lawfully might, invoked one of the provisional remedies furnished by the Code in an endeavor to collect their money.
The action is not founded on contract, but upon the defendant’s wrong. It will not be seriously contended that the plaintiffs either expressly or impliedly intended to make the defendant their debtor to the extent of the overpay *649 ment. If he is to be regarded as their debtor in any sense of that term, it is because of his wrongful act, and he is answerable for the liability in the form in which he created it—tortiously. It becomes of no consequence, therefore, whether we regard the action as one founded on the fraudulent creation of the debt by the' defendant or on the misappropriation of the plaintiff’s money, legally termed conversion of it by the defendant, for, in either event, the order of arrest was properly granted, and the order denying the motion to vacate it must be affirmed, with costs.
Nehrbas, J., concurs.